IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Walker D. Miller

Civil Action No.   05-cv-01933-WDM-MEH

ROBERT L. KEENAN and EUGENE G. SENA,

    Plaintiffs,

v.

COLORADO DEPARTMENT OF HUMAN SERVICES, ET AL.,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This case is before me on the Motion for Summary Judgment (doc no 80) filed by Defendants Colorado Department of Human Services and Marva Hammond (the "State Defendants") and the Motion for Summary Judgment (doc no 89) filed by Defendants Crowley County, Colorado, Board of Commissioners, T.E. Allumbaugh, Matthew Heimerich, and Dwight L Gardner (the "Crowley Defendants"). I have reviewed the parties' written arguments and find oral argument is not required. For the reasons that follow, the motion of the State Defendants will be granted and the motion of the Crowley Defendants will be granted in part.

### Background

The following facts are undisputed for the purposes of the motions for summary judgment.

Plaintiff Keenan ("Keenan") was the Director of the Crowley County Department of

Social Services ("Crowley DSS") from 1979 until the termination of his employment on or around March 25, 2005. Plaintiff Eugene Sena ("Sena") was a caseworker in the Crowley DSS from 1999 until the termination of his employment on or around March 25, 2005.[1] The Crowley Defendants are the governing body of Crowley, County, Colorado; the county commissioners also operate as the Crowley County Board of Social Services ("DSS Board").

The Crowley DSS and the DSS Board administer various social welfare programs in Colorado, including state, federal, and joint programs. At the time Keenan was hired, in 1979, all county social services employees were participants in a Colorado state merit program, which provided certain benefits and protections to covered employees. In 1981, Colorado law changed and exempted county social services directors from the state merit system; however, according to regulatory interpretations, "Directors currently in the system will have their merit system tenure rights protected in compliance with federal requirements." Specifically, Rule 2.11.13 of the Merit System Rules and Regulations was amended to read, "Directors who had permanent status on June 9, 1981, will retain tenure which includes all rights and privileges granted permanent employees under the rules and regulations for as long as they remain in that position without a break in service." Keenan and the Crowley Defendants dispute whether Keenan remained a state merit system employee in 1981. Evidence shows that on July 31, 1981, the Crowley County Commissioners, sitting as the Crowley County Board of Social Services, was informed that the Attorney General had determined that incumbents in the position of Director of Social

---

[1]Plaintiff Sena has settled his claims against the Crowley Defendants. Accordingly, only facts relating to Keenan's employment status are discussed in this section of the order.

Services "were protected by the Merit System for Tenure purposes," and that the Board elected to let Keenan "continue as if he were in the Merit System with regard to leave, salary and the like."

In 1997, the Colorado General Assembly enacted legislation abolishing the state merit system for social services employees and mandating that counties establish their own merit systems. The statute, C.R.S. § 26-1-120(1), provided that as of January 1, 2001, "the merit system for the selection, retention, and promotion of [social services] employees of the county departments that has been operated by the state department pursuant to this section is abolished." Beginning on or after July 1, 1997, but no later than January 1, 2001, each county was required to create for county social services employees a county merit system that complied with certain legislative criteria. *Id.* Counties were required to create a transition plan, to be approved by the state, to govern the transfer of county employees from the state merit system to the newly created county programs and certify to the state that the county merit programs complied with federal merit system standards. *Id.*

The statute also expressly exempted county directors from the state merit system by providing that "[t]he county director of a county department shall be exempt from the merit system established and maintained by the state department pursuant to this section as it existed prior to July 1, 1997. Each county shall determine whether to exempt its county director from the successor merit system designed pursuant to this section." C.R.S. § 26-1-120(11). The Crowley DSS transition plan sets forth that as of January 1, 2001, "all Crowley County Department of Social Services' employees, who are currently under the State Merit System will become employees of Crowley County and under the

administration of the Crowley County Board of County Commissioners;" the plan then goes on to explain the terms governing the transfer of these employees' compensation, leave, seniority, and grievances or appeals, among other things. The plan further provides that "The County Director shall continue to be part of the County System of personnel administration after January 1, 2001." The state approved Crowley County's transition plan by letter dated December 22, 2000. The individual Crowley Defendants testified in their depositions that they believed that Keenan was not a merit system employee but rather an at-will employee. Keenan contends that he was a state merit system employee and, thereafter, a county merit system employee.

Keenan admits that beginning April or May 2004, the Crowley Defendants had discussed with him various performance issues. From February 28, 2005 to March 2, 2005, a team of state auditors audited the Crowley DSS child welfare program on site. Keenan and Sena were both placed on administrative leave on March 15, 2005. On March 21, 2005, the audit team provided the Crowley Defendants with a preliminary or draft audit report. As a result of the information in the report and the recommendations of the auditors, the Crowley Defendants terminated the employment of both Plaintiffs on March 25, 2005. At the board meeting, motions calling for the Plaintiffs' terminations stated that the dismissals were for "failure to meet established job performance (as specified by the State of Colorado) and shoddy work." Plaintiffs were not given an opportunity to rebut the report or given any administrative hearings, grievance procedures, or appeal rights. The Crowley Defendants did not contest the report's conclusions or findings, despite a request by Plaintiffs to be given an opportunity to do so, and the report was issued in its final form around July 2005.

In late March and early April 2005, a number of newspaper articles appeared concerning the audit and the termination of Plaintiffs' employment. These articles were based on a press release issued by the Crowley Defendants as well as interviews with them. In general, the newspaper articles report that the Crowley Defendants had decided, based upon information in the report, to terminate the employment of the two Plaintiffs, who were identified by name. In particular, Defendant Heimerich was quoted as saying "We just lost confidence in the ability of the two employees to perform their job responsibilities." The newspaper articles also contained the language of the Board motions terminating Plaintiffs' employment.

Plaintiffs initiated this action against the Crowley Defendants, in their individual and official capacities, and State Defendants, in their official capacities only. In their Second Amended Complaint, which now governs this matter, Plaintiffs allege four claims for relief: (1) deprivation of vested public employment rights, privileges, and immunities under the Constitution, pursuant to 42 U.S.C. § 1983; (2) violation of state law and regulations, specifically C.R.S. § 26-1-120, 9 C.C.R. 2502-1, § 2.100 ff; (3) outrageous conduct; and (4) defamation. Plaintiffs seek permanent injunctive and declaratory relief against the State Defendants on their first and second claims for relief, essentially seeking a declaration that the conduct of all defendants was unlawful and enjoining future violations of state and federal law. Plaintiffs also seek injunctive and declaratory relief against the Crowley Defendants, as well as reinstatement, an opportunity to refute the allegations in the audit, and damages.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

1.  State Defendants' Motion for Summary Judgment

Plaintiffs seek only declaratory and injunctive relief against the State Defendants, not damages. The State Defendants move for summary judgment on the grounds that the Plaintiffs were not employees of the State of Colorado and, therefore, the State Defendants have no authority to employ, fire, or re-hire the Plaintiffs. In addition, the State Defendants argue that Plaintiffs cannot demonstrate that there is a cognizable danger of future harm or a recurrent violation of law that would justify the issuance of an injunction, particularly since there is little the State Defendants could be required to do to remedy Plaintiffs' alleged injuries. Finally, the State Defendants argue that declaratory relief is not warranted because they have no legally cognizable interest in the lawfulness of Plaintiffs' termination and, therefore, there is nothing to declare. I agree with the State Defendants that summary judgment should enter in their favor.

It is undisputed that after the abolition of the state merit system in 2001, personnel issues in county social services departments became the exclusive province of the county authorities; the state has no role in appeals or review of individual employee matters. C.R.S. § 26-1-120(10). The State Defendants note that the state is responsible for reviewing each county's transition plan and that Crowley County's initial transition plan was not approved because it provided that employees of county departments were "at-will," which was not true for merit system employees. After the county represented that it would exclude merit system employees from at-will status, the transition plan was approved. The state also reviews the performance of county social services departments to ensure that they are operating in accordance with state rules.

Plaintiffs argue in response that the state is responsible for ensuring compliance with federal merit system standards, citing various state and federal statutes. Plaintiffs appear to argue that the State Defendants failed to ensure that merit system employees were not actually treated as at-will employees and that the yearly certifications were accurate or complete, as evidence shows the county failed to file certifications in 2003 and 2004. In addition, Plaintiffs argue that the state auditors abetted and/or failed to stop the allegedly unlawful termination of Plaintiffs' employment.

I agree with the State Defendants that even if Plaintiffs could demonstrate that the state auditors or other state actors owed Plaintiffs an individual duty, Plaintiffs' allegations all relate to past harms and their facts do not indicate a danger of future violations of law. A party moving for injunctive relief must satisfy the court that "there exists some cognizable danger of recurrent violation." *Wessel v. City of Albuquerque*, 299 F.3d 1186, 1194 (10th Cir. 2002) (quoting *United States v. W.T. Grant*, 345 U.S. 629, 633 (1953)); *see also GF*

*Gaming Corp. v. City of Black Hawk, Colo.,* 405 F.3d 876, 882-83 (10th Cir. 2005) (claim for declaratory judgment is moot when conduct occurred in past and is not likely to recur). The relief Plaintiffs seek, i.e., reemployment and an opportunity to rebut the allegations in the audit report, is appropriately obtained from the Crowley Defendants, not the State Defendants.  Moreover, Plaintiffs' alleged harm did not flow from the actions of the State Defendants.  Rather, the harm, if any, came from the county's determination that Plaintiffs were not merit system employees, thus taking them out of the administrative protections of that system.  This kind of individualized decision has nothing to do with the state's general oversight duties in ensuring that the merit system operates in accordance with lawful standards.  Moreover, as noted by the State Defendants, even if the state auditors recommended, encouraged, or even threatened to withhold funds absent the termination of the Plaintiffs' employment, it was still the Crowley Defendants who decided to do so without giving Plaintiffs the benefit of a hearing and appeal process.

Plaintiffs contend that if they are reinstated, they would simply be terminated again absent an injunction and/or declaration as to the State Defendants.  This does not suffice, particularly since Plaintiffs have shown no policy or program-wide problem that caused or would continue to cause any harm to Plaintiffs.  Even if they prevail, Plaintiffs would be entitled to no more than the protections guaranteed to merit system employees in discipline or discharge.  There is nothing in the record from which I could conclude that those procedural protections would be inadequately applied to Plaintiffs absent an injunction or declaration.  Accordingly, the State Defendants' motion should be granted.

2.  <u>Crowley Defendants' Motion for Summary Judgment</u>

The Crowley Defendants move for summary judgment on the grounds that Keenan

was an at-will employee, not a merit system employee, and therefore the Crowley Defendants cannot be liable for summarily dismissing him. The Crowley Defendants also argue that the state statutes cited in Plaintiffs' second claim do not provide a private right of action. The third claim, for outrageous conduct, should be dismissed because the termination was proper and not outrageous. Finally, the Crowley Defendants contend that Keenan's claim for defamation fails because the statements at issue are not false, not defamatory, or are privileged.

A.  At-will status

There appears to be little dispute between the parties that if Keenan was at-will, no liability will attach for his summary discharge. On the other hand, if he was a merit system employee, he may have been entitled to certain procedural protections prior to the final dismissal. The Crowley Defendants argue that by 1997 at the latest, Keenan was no longer a state merit system employee and that, after the shift to the county merit system, he remained an at-will county employee. In response, Keenan argues that the state merit system was "transferred" to the county (and never abolished). He further notes that the 1997 statute provided that each county was required to "determine whether to exempt its county director from the successor [county] merit system." C.R.S. 26-1-120(11). Keenan contends that the Crowley Defendants never determined whether to exempt him from the county merit system.

In construing state statutes, a federal court is bound by the state's rules of statutory construction. *United States v. DeGasso*, 369 F.3d 1139, 1145-46 (10th Cir. 2004). Under Colorado rules of construction, a court should avoid a construction that could pose constitutional difficulties. *See, e.g., Meyer v. Lamm*, 846 P.2d 862, 876 (Colo.1993) (

"[W]e are guided by the principle that statutes must be construed in such manner as to avoid potential constitutional difficulties. The presumption of constitutionality accorded all statutes also assumes that the legislative body intends the statutes it adopts to be compatible with constitutional standards."). In addition, the Colorado courts direct that when interpreting a number of interrelated statutory sections, "consistent, harmonious, and sensible effect to the statutory scheme as a whole" must be given. *Gallegos v. Colorado Ground Water Comm'n*, 147 P.3d 20, 28 (Colo. 2006).

The Crowley Defendants argue that the effect of the 1997 legislation was to immediately and retroactively exempt Keenan from the state merit system and eliminate all protections thereby afforded to him. I disagree. Such a construction would raise serious questions about the constitutional validity of the statute, as it would entail the retroactive abolishment of a state granted benefit. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The merit system itself was not abolished until January 1, 2001. The statute is silent regarding the presumed status of a merit system director during the transition period from 1997 to 2001. However, construing the language and provisions of the statute as a whole, it appears that the purpose of the legislation was to keep employees in the state system until a successor county system was created. This is supported by the provisions of section 26-1-120(1), which calls for each county to provide for a merit system and mandates that "[p]rior to transferring county employees to *a successor* merit system" (emphasis added), the county must create a transition plan to address issues that might arise during the transfer. Counties were given the option to exempt directors from their own merit systems once the county merit system became effective. The effect of these provisions together, and of Crowley County's transition plan,

indicate that the county and state interpreted the law to be that county employees covered by the state merit system on July 1, 1997, the effective date of the legislation, remained covered by the state system until January 1, 2001, when the county merit systems took over. I note that section 26-1-120(11) states that directors "shall be exempt," which would indicate that the exemption will take effect in the future.

I conclude, therefore, that I cannot determine Keenan's status in 2005 merely by reference to the effect of C.R.S. § 26-1-120. Even if the Crowley Defendants are correct to the extent that Keenan was no longer a state merit system employee after 1997, there are genuine issues of material fact as to whether Keenan was exempted from the county merit system. Crowley County's plan provided that, "on January 1, 2001, all Crowley County Department of Social Services employees, who are currently under the State Merit System will become employees of Crowley County and under the administration of the Crowley County Board of the Crowley County Board of County Commissioners. Such transition shall be pursuant to this Transition Plan and all employees shall be subject to the Crowley County Personnel System covering selection, retention and promotion of employees." With specific reference to the county director, the transition plan provides "The County Director shall continue to be part of the County System of personnel administration after January 1, 2001." I cannot determine from the face of this document the meaning of "the County System of personnel administration," which is not defined, and how this is distinguished from the personnel system that governed merit system employees.

In addition, Keenan presents as evidence a personnel form approving a pay raise for him effective January 2000. The form is entitled "Merit System Personnel Action,"

which would indicate that Keenan was a merit system employee. However, there is testimony that the form was used for both merit system and exempt employees. In light of these evidentiary conflicts, I cannot determine as a matter of law whether Keenan was in the county merit system or not. Accordingly, summary judgment is not appropriate on Keenan's section 1983 claim.

      B.      Violation of Colorado Statute

Keenan's second claim is that the Crowley Defendants violated state law and regulations, specifically C.R.S. § 26-1-120, 9 C.C.R. 2502-1, § 2.100 ff. The Crowley Defendants argue that these statutes do not provide a private right of action. The substance of this claim appears to be that Keenan seeks to enforce whatever procedures he would be entitled to were he found to be a county merit system employee and damages. Even if this is not cognizable as an independent cause of action, to the extent Keenan can establish that he is not an at-will employee, but rather a county merit system employee, he would be able enforce his rights under the statute as a claim of denial of due process or pursuant to C.R.C.P. 106. *See Hopwood v. Boulder County Dep't of Social Services*, 44 Colo. App. 181, 613 P.2d 346 (1980). Since there is an issue of fact as to Keenan's status, I conclude that summary judgment on this claim is not appropriate.

      C.      Outrageous Conduct

The Crowley Defendants argue that Keenan's third claim, for outrageous conduct, fails because they properly terminated his at-will employment. The failure to grant merit system protections to a person believed to be an at-will employee would not be outrageous. Even assuming an alternate conclusion, i.e., that Keenan was under a merit system at the time of the termination, the Crowley Defendants' belief to the contrary and

actions consistent with that belief could not be considered beyond all possible bounds of decency and utterly intolerable by a reasonable jury. *See* CJI Civil 23:2 (4th ed.). Accordingly, dismissal of this claim is appropriate.

D. <u>Defamation</u>

Finally, the Crowley Defendants contend that the defamation claim fails. I agree. The statements that Keenan contends are false and defamatory do not give rise to liability for numerous reasons.

The Second Amended Complaint identifies a number of allegedly false and defamatory publications, primarily based on statements concerning the reason for Plaintiffs' dismissal. However, when Keenan was asked in his deposition about each news article or publication, Keenan identified only the following as defamatory statements underlying his claim: (1) statement in a March 22, 2005 press release (and other publications) that the audit of the Crowley County DSS was prompted by "some statistical anomalies that were generated by the State's Child Welfare Optimization Allocation model;" (2) statement in same press release (and other publications) that "once a written report [of the audit] is available the [Crowley Defendants] will examine it and if warranted, challenge any findings it disagrees with;" (3) statement by Defendant Heimerich in a March 23, 2005 Pueblo Chieftan article that "it is way too early to determine if the probe is a criminal investigation against the two workers. 'I think it's way to [sic] premature to start speculating about that. This is just the very first stage of this review;'" (4) statement by a state auditor in a March 29, 2005 Ordway New Era article that "One child welfare case is almost unheard of in a county this size;" (5) statement by Defendant Heimerich in a March 29, 2005 Pueblo Chieftan article that "We just lost confidence in the ability of the two

employees to perform their job responsibilities"; (6) statement in same article that "[the Crowley Defendants] have not determined if the probe is a criminal investigation against the two workers"; (7) article reporting that the board motions calling for Plaintiffs' termination contained statements concerning their "failure to meet established job performance (as specified by the State of Colorado) and shoddy work."

A claim of defamation requires as a prerequisite a defamatory false statement of fact. *Williams v. District Court,* 866 P.2d 908, 911 n. 4 (Colo. 1993). Defamation is a communication that holds an individual up to contempt or ridicule thereby causing him or her to incur injury or damage. *Lockett v. Garrett*, 1 P.3d 206, 210 (Colo. App. 1999). However, this common law tort is subject to the legal principles developed in First Amendment jurisprudence protecting free expression of opinions on matters of public concern. Thus, if a public figure or matter of public concern is involved, a plaintiff has a heightened burden and must prove a statement's falsity by clear and convincing evidence, rather than a preponderance of the evidence. *Id*. In addition, the plaintiff must present clear and convincing proof that the statement was made with actual malice–i.e., with knowledge that the statement was false or with reckless disregard of whether the statement was true or false. *Id*. The parties do not appear to dispute that Keenan's work and dismissal are matters of public concern.

Finally, if the alleged defamatory statement is expressed as an opinion, it may also be privileged. The controlling authority on the fair comment privilege protecting opinions on matters of public concern is *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), which the Colorado Supreme Court addressed in *Keohane v. Stewart*, 882 P.2d 1293, 1298 (Colo.1994), *cert. denied*, 513 U.S. 1127 (1995). A "statement of opinion relating to

matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich*, 497 U.S. at 20.

Keenan has not demonstrated that there are genuine issues of fact as to whether the statements in (1) and (2) are false, defamatory, or made with malice. First, even if these statements pertained to Keenan individually, which they do not, they do not contain any false statement of fact. As to (1), Keenan offers no evidence to dispute that the audit was indeed triggered by the results of the statistical model, but rather disagrees with the validity of using such a model for this purpose. Any implied representation of validity, however, is a matter of opinion that would be protected here.[2] Moreover, Keenan does not dispute the accuracy of statement (2), but contends that he and Sena should have been the ones to rebut the allegations in the audit report. However, this is simply a disagreement about what would have been fair or sensible under the circumstances, not an issue of factual falsity.

Statements (3) and (6) also are not false or defamatory, even though they make mention of a theoretically possible future criminal investigation. As even Keenan apparently conceded in his deposition, these statements do not falsely insinuate that Keenan engaged in criminal conduct but rather make clear that no criminal investigation

---

[2]Colorado has adopted the fair comment principle embodied in Section 566 of the Restatement. *See Bucher v. Roberts,* 198 Colo. 1, 595 P.2d 239 (1979). "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." Restatement (Second) of Torts § 566 (1977); *see also Keohane,* 882 P.2d at 1298. One distinction employed in previous case law is that of "evaluative" as opposed to "deductive" opinion. Evaluative opinions are those that are not provably false and are protected; in contrast, deductive opinions are those that state or imply assertions that may be proven false. *Jefferson County Sch. Distr. No. R-1 v. Moody's Investor's Serv., Inc.,* 175 F.3d 848, 853 (10th Cir. 1999).

was warranted at that time.  Statement (4) was not made by or attributable to any of the Crowley Defendants and so cannot support a claim against them.

Statement (7), which concerns the motions passed when terminating Plaintiffs' employment, appear to be covered by an absolute privilege.  *Lininger v. Knight*, 123 Colo. 213, 221, 226 P.2d 809, 813 (Colo. 1951) (communications relating to legislative and judicial proceedings, and other acts of state, are absolutely privileged).  The reasons for Plaintiffs' termination were statements made in a Board of County Commissioners' meeting.  Keenan has offered no evidence or argument to dispute that these statements were privileged.

Statement (5) also cannot support a claim of defamation.  Keenan does not appear to dispute that the Crowley Defendants did lose confidence in his job performance.  However, he contends that this is false and defamatory because it was based on the invalid statistical model.  As discussed, this does not suffice.  Moreover, he contends in his response brief that any statements concerning the reasons for his termination were false because he had not been given an opportunity to rebut the allegations, the Crowley Defendants knew the report was preliminary, and the Crowley Defendants did not investigate or substantiate the audit's charges.  These objections, however, do not demonstrate that the information contained in the report was factually false <u>and</u> that the Crowley Defendants actually knew or recklessly disregarded the possibility that the report was based on false facts.  At most, Keenan appears to contend that the Crowley Defendants republished without independent investigation the evaluative opinions of the state auditors.  Keenan has identified no legal authority that would permit the imposition of liability on the Crowley Defendants for such conduct.  No reasonable juror could

conclude on this record that Keenan has proved by clear and convincing evidence that the Crowley Defendants made false statements with actual malice. Accordingly, summary judgment should enter in favor of the Crowley Defendants on Keenan's defamation claim.

Accordingly, it is ordered:

1. The Motion for Summary Judgment (doc no 80) filed by Defendants Colorado Department of Human Services and Marva Hammond is granted. Summary judgment is entered against Plaintiffs and the claims against these defendants are dismissed with prejudice.

2. The Motion for Summary Judgment (doc no 89) filed by Defendants Crowley County, Colorado, Board of Commissioners, T.E. Allumbaugh, Matthew Heimerich, and Dwight L Gardner is granted as to the claims of outrageous conduct and defamation. Summary judgment is entered against Plaintiff Robert Keenan and these claims are dismissed with prejudice. Keenan's claims pursuant to 42 U.S.C. § 1983 and C.R.S. § 26-1-120 (and associated regulations) remain pending.

DATED at Denver, Colorado, on July 9, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge